# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 143

OCTOBER TERM, A.D. 2015

*November 12, 2015*

LARAMIE COUNTY SCHOOL
DISTRICT NUMBER ONE ex rel.
BOARD OF TRUSTEES OF LARAMIE
COUNTY SCHOOL DISTRICT
NUMBER ONE, a Wyoming
Governmental Entity,

Appellant
(Defendant),

v.                                                            S-15-0043

KORT KINSTLER,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Catherine R. Rogers, Judge*

*Representing Appellant:*
> Robert C. Jarosh and Traci L. Lacock of Hirst Applegate, LLP, Cheyenne, Wyoming

*Representing Appellee:*
> Pro se

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    The Board of Trustees of Laramie County School District No. One (District)[1] appeals from a summary judgment granted to a teacher, Kort Kinstler, in his suit to recover salary and the value of benefits allegedly owed to him following a decision not to reemploy him at the end of the 2011-2012 school year.  We reverse and vacate the award.

## ISSUE

[¶2]    This appeal turns on a single question of statutory construction, which we restate as follows:

> Do the phrases "notice of recommendation of termination" and "notice of termination" in Wyo. Stat. Ann. § 21-7-106 refer to two separate documents to be issued by the District, or did the legislature intend those phrases to be used interchangeably to designate a single document?

## FACTS

[¶3]    During the 2011 to 2012 school year, Kinstler was a continuing contract teacher[2] who had worked for the District for approximately ten years.  On March 30, 2012, the District Superintendent gave him written notice that he had recommended that Kinstler be terminated for "[u]nsatisfactory performance and incompetence in the area of creating an appropriate classroom environment."[3]  Five days later, Kinstler formally requested a hearing.  During a conference call with the hearing officer on May 10, the parties waived the 45-day statutory deadline for commencing the hearing, and subsequently the initial settings for the hearing and a prehearing conference had to be continued to allow Kinstler more time to find an attorney.

[¶4]    As a result of his attorney's participation in another conference call on June 11, 2012, the hearing officer scheduled a prehearing conference for August 6, with the hearing to begin a week later.  Although the attorney Kinstler retained withdrew on or about June 25, a two-day hearing took place as scheduled on August 13 and 14, with

---

[1] The board may sue and be sued in the name of the District.  Wyo. Stat. Ann. § 21-3-111(a)(i).

[2] After three years of working under one-year contracts, an initial contract teacher may attain tenure as a continuing contract teacher and work under a continuing contract which need not be formally renewed, but which may only be terminated on specified grounds, and upon proper notice and an opportunity for a hearing.  Wyo. Stat. Ann. §§ 21-7-102 through 110.

[3] Wyoming's Teacher Employment Law distinguishes between "dismissal" and "termination."  Dismissal is the cancellation of a teacher's contract during the term in which it is in effect.  Wyo. Stat. Ann. § 21-7-102(a)(iii).  Termination is a failure by the Board to renew a teacher's contract for an upcoming year.  § 21-7-102(a)(viii).  This case involves termination, not dismissal.

1

Kinstler representing himself. On September 4, 2012, the hearing officer issued findings of fact, conclusions of law, and a recommendation that the District accept the superintendent's proposal that Kinstler be terminated.

[¶5]   The Board of Trustees voted to accept the recommendation at a meeting on September 17, 2012, and District administration advised Kinstler of this the following day by letter. He did not seek judicial review of that decision. Kinstler was paid his normal salary from August 15, 2012 (the date he would have started to work) through the date that the Board acted on the recommendation to terminate him.

[¶6]   Nearly a year later, on September 12, 2013, Kinstler sued the District, claiming that it failed to pay him the full salary[4] and retention bonus he was due at the time of his termination. The District filed a timely answer to his complaint, and the parties filed cross-motions for summary judgment in early 2014.

[¶7]   Kinstler's salary claim rested on the language of Wyo. Stat. Ann. § 21-7-106, which at the end of the 2011-2012 school year[5] provided:

> (a) A continuing contract teacher shall be **notified of a recommendation of termination** by the superintendent or any member of the board designated by the superintendent or designated by the board pursuant to a majority vote of the board by giving the teacher written notice together with written reasons for termination on or before April 15 of any year. Upon receipt of notice, the teacher may request a hearing on the recommendation before an independent hearing officer as provided under W.S. 21-7-110.
>
> (b) If ordered by the board under W.S. 21-7-110(g), termination under recommendation shall be effective at the end of the school year in the year in which **notice of termination** is given.

(Emphasis added). Kinstler contended that the notice of recommendation of termination addressed in subsection (a) was given on March 30, 2012—during the 2011-2012 school year—but that the notice of termination addressed in subsection (b) referred to the letter announcing the District's decision to uphold the recommended termination on September 17, 2012—during the 2012-2013 school year. He argued that even though he would no

---

[4] Kinstler also sought to recover the value of benefits he would have received during the 2012-2013 academic year. For brevity's sake, we will refer to the claim for salary and benefits as a claim for salary.

[5] Amending legislation in 2011 added "through the office of administrative hearings" after "hearing officer" in subsection (a) and made the change effective July 1, 2012. 2011 Wyo. Sess. Laws ch. 182, §§ 1, 6 (originally SF 146).

2

longer be working for the District, he was entitled to be paid his prior annual salary for the entirety of the 2012 through 2013 school year because he began that academic year still employed as a continuing contract teacher.

[¶8]    The District argued that the legislature used the terms interchangeably – that is, that both terms referred to the notice given by the superintendent at the end of the 2011-2012 academic year.  It also pointed out that Wyo. Stat. Ann. § 21-7-110(g) provides that a continuing contract teacher's employment must be terminated by a "written order" of the Board.

[¶9]    The district court agreed with Kinstler, partially granted his summary judgment motion, and on December 31, 2014 entered an order with respect to his salary and benefits claim[6] pursuant to W.R.C.P. 54(b).[7] [8]  The District timely perfected this appeal.

## DISCUSSION

[¶10]  Courts construe statutes as a matter of law.  Consequently, we review *de novo* with the goal of determining legislative intent.  That goal is best achieved by reading any particular statute or statutory provision in harmony with related statutes with the same subject or purpose as a whole and giving appropriate effect to the plain, ordinary meaning of every word, clause and sentence.  *Rock v. Lankford*, 2013 WY 61, ¶¶ 17, 19, 301 P.3d 1075, 1080 (Wyo. 2013).  Courts should presume that lawmakers intend related statutes to operate consistently and harmoniously.  Therefore, parts of them should not be viewed in isolation, but should be interpreted by comparing them with other parts or sections.  2A Norman Singer & Shambie Singer, *Sutherland Statutory Contruction* § 46:5 (7th ed. updated November 2014).

---

[6] His claim for payment of a retention bonus remained to be tried, but the parties submitted it for mediation.  There was a dispute about the terms of the settlement, but the district court resolved that controversy by an order finding the terms of settlement, enforcing them, and dismissing the case.  Kinstler did not appeal that order, and we therefore do not address it.

[7] It is doubtful that the 54(b) certification was valid, as it did not resolve all claims Kinstler made against the District because the claim for a retention bonus remained.  *See Mott v. England*, 604 P.2d 560, 563 (Wyo. 1979) (Rule 54(b) does not permit the appeal of a partial adjudication of the rights or one or more of the parties.  Only a complete disposition of the claim relating to at least one of the parties may be certified, citing 10 Wright and Miller, *Federal Practice and Procedure* § 2653 (1973)).  However, the order enforcing the settlement and dismissing the case rendered any flaw in the 54(b) finding immaterial, and we treat the notice of appeal filed before the order dismissing the rest of the case was entered as premature but valid.  W.R.A.P. 2.04; *Northwest Bldg. Co., LLC v. Northwest Distributing Co., Inc.,* 2012 WY 113, ¶ 28, 285 P.3d 239, 246 (Wyo. 2012).

[8] The district court indicated that it intended to enter a judgment in Kinstler's favor "upon presentation to the Court of an appropriate form of judgment."  We are unable to locate any such judgment in the record.  However, we conclude that the court's order denying reconsideration and determining that Kinstler was entitled to the compensation he claimed became a final although ambiguous judgment that he was owed the money he claimed, at least when the claim relating to the retention bonus was dismissed.

3

[¶11] Before we begin our discussion of the issue this appeal presents, it is important to recognize an issue that is not involved. Wyo. Stat. Ann. § 21-7-110(d) and (g) set strict time frames for disposing of disputed recommendations for termination. Section 110(d) provides that a hearing officer "shall" set a date for hearing within five days of being selected. The same section provides that "[i]n no event shall the hearing commence on a date later than forty-five (45) days" after notice of intent to suspend, dismiss, or terminate a continuing contract teacher. Subsection (g) provides that the school board "shall" issue a written order within twenty days of receipt of the hearing officer's recommendation.

[¶12] In this case, Mr. Kinstler waived those time frames, and the parties did not directly address them in this appeal.[9] We are not, therefore, required to determine what impact failure to comply with these limits would have on a continuing contract teacher's right to compensation if a decision was not reached before the beginning of the next school year. We are instead required only to interpret the meaning and impact of the terms "notice of recommendation of termination" and "notice of termination."

[¶13] Kinstler's salary claim rested on the notion that § 21-7-106(a) speaks of a notice of recommendation of termination, while subsection (b) of that statute refers to a notice of termination. He argued that the use of two different phrases indicated that the legislature intended to refer to two different events, the latter of which took place during the 2012-2013 school year. The district court accepted that reasoning and further differentiated the two phrases by referring to the latter as a notice of "actual" termination. The court therefore concluded that Kinstler's termination was not effective until the end of the 2012-2013 school year, and that he was entitled to be paid for that entire school year pursuant to subsection (b).

[¶14] That reasoning is certainly consistent with the tenet of statutory construction that when different words are used in the same or a related statute, they are usually intended to have different meanings. *See In re Kite Ranch, LLC*, 2010 WY 83, ¶ 20, 234 P.3d 351, 359 (Wyo. 2010); 2A Singer, *supra*, § 46:6. However, a closer look reveals a different intent.

[¶15] As the United States Supreme Court framed a similar concern more than eighty years ago:

> The rule that, where the statute contains no ambiguity, it must be taken literally and given effect according to its language, is a sound one not to be put aside to avoid hardships that may sometimes result from giving effect to the

---

[9] Mr. Kinstler's brief can be read to suggest that he did not waive these time frames. However, the only record on this point is the hearing examiner's finding that he did, and the affidavit of a school administrator to the same effect, and therefore we consider the time limits to be waived.

legislative purpose. *Commr. of Immigration v. Gottlieb*, 265 U.S. 310, 313, 44 S.Ct. 528, 68 L.Ed. 1031; *Bate Refrigerating Co. v. Sulzberger*, 157 U.S. 1, 37, 15 S.Ct. 508, 39 L.Ed. 601. But the expounding of a statutory provision strictly according to the letter without regard to other parts of the act and legislative history would often defeat the object intended to be accomplished. Speaking through Chief Justice Taney in *Brown v. Duchesne*, 19 How. 183, page 194, 15 L.Ed. 595, this court said: "It is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature, as thus ascertained, according to its true intent and meaning."

*Helvering v. New York Trust Co.*, 292 U.S. 455, 464, 54 S.Ct. 806, 808-09, 78 L.Ed 1361 (1934). *See also Leach v. FDIC*, 860 F.2d 1266, 1270 (5th Cir. 1988) ("[E]ven apparently plain words, divorced from the context in which they arise and in which their creators intended them to function, may not accurately convey the meaning the creators intended to impart."); 2A Singer, *supra*, § 46:5.

[¶16] When we look at Wyo. Stat. Ann. § 21-7-110, we are compelled to reach a different result than the district court did. Before the 2011 amendment to that statute became effective on July 1, 2012, subsection (e)—including the parts we have enclosed in brackets below—read as follows:

(e) At the hearing, [the teacher has the right to appear in person with or without counsel, to be heard, to present testimony or witnesses and all evidence bearing upon proposed termination, dismissal or suspension and to cross examine witnesses.] The superintendent shall have the burden of proving that the **recommendation for termination** is based upon reasons provided in the **notice of termination submitted pursuant to W.S. 21-7-106(a)** or that suspension or dismissal is based upon reasons specified in the notice given under subsection (b) of this section, as applicable.

5

(Emphasis added). The amendment removed the bracketed material.[10]

[¶17] The only "notice" mentioned in § 21-7-106(a) is the notice of recommendation of termination. Because the phrase "notice of termination" is used in § 21-7-106(b), Kinstler and the district court concluded that the legislature was referring to two separate notices. However, in § 21-7-110(e) the legislature used the phrase "notice of termination" in reference to, and as interchangeable with, the "notice" addressed in § 21-7-106(a)—i.e., the notice of recommendation of termination. Furthermore, the legislature spoke of the notice of termination as an event that precedes the hearing, not as a notice of actual termination that can only follow a hearing.

[¶18] Also notable is one of the changes made to § 21-7-110(c) by the 2011 legislation. Prior to that legislation, the first part of subsection (c), less the portions we have placed in brackets, read in pertinent part as set out below. The 2011 amendment added the bracketed material.

> (c) Any continuing contract teacher receiving **notice of a recommendation of termination under W.S. 21-7-106(a)** . . . is entitled to a hearing before an independent hearing officer [provided through the office of administrative hearings] on the recommendation [for termination] . . . upon submission of a written request to the superintendent. The request for hearing shall be given within seven (7) days after receipt of **notice** [**of termination**] **under W.S. 21-7-106(a)**[.]

(Emphasis added). As we have previously observed, this Court may examine an amendment to a statute to help evaluate the legislative intent which may have accompanied the statute's wording in its original form. *Dep't of Revenue & Taxation v. Irvine*, 589 P.2d 1295, 1300 (Wyo. 1979).

[¶19] The 2011 amendment made one substantive change that requires the hearing officer in these cases to be assigned from the Office of Administrative Hearings. The remaining change appears to be a merely stylistic housekeeping amendment designed to conform the wording of this subsection to that which, as noted above, already existed in subsection (e). *See generally State ex rel. West Park Hosp. Dist. v. Skoric*, 2014 WY 41, ¶ 20, 321 P.3d 334, 342 (Wyo. 2014); *Nylen v. Dayton*, 770 P.2d 1112, 1116 (Wyo. 1989) (both recognizing that amendments often incorporate additions and deletions which reflect a concern with style, rather than an intent to change the meaning of a word or phrase).

---

[10] Although that change became part of 2011 Wyo. Sess. Laws ch. 182, § 1, it was not originally contained in SF 146. Rather, it was added to that bill by the adoption of house amendment SF0146H2006.

6

[¶20] The amendment confirmed the legislature's intended use of the phrase "notice of termination" to refer to the notice of recommendation of termination, not to some final document issued by the board of trustees after reviewing the hearing officer's suggested disposition of the case. That latter document has, since 1993,[11] been designated in § 21-7-110(g) as "a written order to . . . terminate . . . or to retain the teacher", a "copy of [which] shall be provided to the teacher[.]"[12]

[¶21] Termination of employment is thus through a "written order," rather than a "notice." It happened in this case that the district gave notice of the decision by letter, but that is not what the statute required.

[¶22] Although it played no discernible part in the district court's decision, Kinstler points out that he was paid and provided benefits from August 15, 2012 through September 17, 2012. We are unable to attribute any significance to the District's decision to provide him with compensation pending the outcome of the hearing and Board action based upon the hearing examiner's recommendation. Appellant's counsel advised the district court that the District had a policy requiring employees to be paid pending a board decision upholding termination to avoid claims for consequential damages if the employee is reinstated. Whatever the reason, Kinstler was not entitled to compensation for the 2012-2013 academic year based upon the statutory language we have just analyzed, and the fact that the District may have chosen to hedge its bet by paying him for a short period does not affect the result.

[¶23] Finally, Kinstler argued below that the purpose of the notice provisions of the statutes referred to above was to assure that he had time to find other employment if he was terminated. The district court found this contention persuasive, relying on *Borman v. Sweetwater County School Dist. No. 2*, 627 P.2d 1364, 1366 (Wyo. 1981). However, *Borman* dealt with the requirement that an initial contract teacher be notified by March 15 (now April 15 under Wyo. Stat. Ann. § 21-7-105) if the school district did not intend to renew her contract, which it was entitled to do without a showing of statutory grounds. This Court held that the purpose of requiring notice was to give the teacher time to seek employment elsewhere in the next school year. *Borman*, 627 P.2d at 1366. We are able to resolve the issue presented to us on the language of the statute and the amendments to it, and we therefore do not need to determine whether the reasoning of *Borman* extends to termination of a continuing contract teacher for the reasons stated in § 21-7-110(a).

---

[11] 1993 Wyo. Sess. Laws ch. 219, § 1 (originally HB 357).
[12] As set out above, § 21-7-106(b) provides: "If ordered by the board under W.S. 21-7-110(g), termination under recommendation shall be effective at the end of the school year in the year in which notice of termination is given." Perhaps we belabor the point to observe that the legislature did not end that sentence with "in which notice of that order is given."

[¶24]  We conclude that the district court misconstrued the term "notice of termination" to mean something other than the notice of recommendation of termination.  The legislature used the terms interchangeably.  Kinstler's termination was therefore effective at the end of the 2011-2012 school year, and he had no statutory right to compensation following that date.

## CONCLUSION

[¶25]  We reverse and vacate the district court's order granting Kinstler the value of his salary and benefits for the 2012-2013 academic year.